IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA KOZEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| ACCENTURE LLP, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Barbara Kozel, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendant, Accenture LLP ("Defendant"), states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action under the Family and Medical Leave Act ("FMLA") to challenge Defendant's unlawful interference with her rights under the FMLA as well as its discrimination and retaliation against her because she exercised her FMLA rights.

2. Defendant also subjected Plaintiff to discrimination based on her actual and/or perceived disability as well as retaliation for seeking reasonable accommodations and opposing the unlawful conduct. After exhausting the administrative process with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), Plaintiff will seek leave to amend this Complaint to add claims under the Americans with Disabilities Act ("ADA") and the Illinois Human Rights Act ("IHRA").

## JURISDICTION AND VENUE

3. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 and principles of pendent and supplemental jurisdiction.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff was formerly employed by Defendant as a Management Consultant Manager. Plaintiff began her employment with Defendant in March 2014 and was unlawfully terminated on May 1, 2019.

6. Defendant is a global professional services company, providing a broad range of services in strategy, consulting, technology and operations, among others.

7. With offices and operations in 52 countries, Defendant has more than 450,000 employees and generated over $41 billion in gross revenues in fiscal year 2018. At all times relevant to this Complaint, Defendant was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

8. During her employment, Plaintiff held the position of Management Consultant Manager. Plaintiff worked in the Financial Services area, specifically in Defendant's finance and risk practice.

9. Throughout her employment, Plaintiff discharged her duties competently and enjoyed an excellent reputation with regard to the high quality of her work and her conscientious devotion to her job. To be sure, Plaintiff was praised in performance reviews for being a "great team player" and a "hard worker who can be relied upon." She was also described as having "good interactions and follow through" and as being "quite thoughtful" with a "good attitude" and "high quality" deliverables.

10. Given her exemplary job performance and the fact that she enjoyed working for Defendant and its clients, Plaintiff had every reason to anticipate a long and successful career with Defendant. Despite her achievements and impressive performance, however, Defendant subjected Plaintiff to adverse actions and terminated her employment effective May 1, 2019. As described in further detail below, Defendant's conduct violates the FMLA, ADA and IHRA.

***Plaintiff's Disabilities And Need For FMLA Leave And Reasonable Accommodations***

11. As an initial matter, Plaintiff is a qualified individual with a disability as defined by the ADA. More specifically, for several years, Plaintiff has suffered ulcerative colitis, an inflammatory bowel disease, and primary sclerosing cholangitis ("PSC"), a chronic disease of the liver. PSC can eventually lead to liver failure, repeated infections, and tumors of the bile duct or liver. A liver transplant is the only known cure for advanced PSC and Plaintiff is currently part of a pre-liver transplant program at Northwestern Memorial Hospital.

***Defendant Discriminated Against Plaintiff***
***Because of Her Disabilities And Need For FMLA Leave***

12. In July 2016, Plaintiff began taking intermittent leave under the FMLA for the health issues described above and continued to do so throughout the remainder of her employment. Plaintiff's intermittent medical leave was also a necessary reasonable accommodation under the ADA and IHRA.

13. Although Plaintiff's FMLA leave was approved and she never exceeded the time allowed by law, Defendant took adverse actions against her because of her disabilities and need for FMLA leave / accommodations by, among other actions, denying her opportunities to work on certain projects and abruptly removing her from several projects, as explained below.

3

14. As just one example, shortly after Plaintiff disclosed her disabilities to Defendant in mid-2016 and her initial request for FMLA leave was approved, the senior manager to whom Plaintiff then reported tried to force Plaintiff off her current project specifically because of her medical condition. The senior manager openly questioned whether Plaintiff could meet the demands of the role, even though Plaintiff had not given any indication that she could not. The senior manager also suggested Plaintiff would be more comfortable with a non-travel role given her medical condition and appointments, knowing that such a role would diminish Plaintiff's status within the firm and impair her ability to advance.

15. Following the senior manager's unjust attempt to force her off a project, Plaintiff complained about the unlawful conduct but to no avail. More specifically, Plaintiff first resisted the removal to the senior manager directly and then escalated her concern that that the senior manager's comments and conduct were discriminatory to the managing director on the project, who only defended the senior manager's inappropriate comments.

16. Plaintiff also reported her concerns to human resources and made it clear that despite her disabilities, she was capable of travel and of performing her job. While Plaintiff stayed on the assignment temporarily, Defendant abruptly removed her from it less than three months later.

17. Notably, Defendant allowed Plaintiff's colleague who was performing the same work as her (but was not disabled or on FMLA leave) to continue on the project into 2017. Plaintiff's colleague who remained on the project was later promoted to senior manager, a promotion Plaintiff could and should have received if she had not been discriminatorily removed from the assignment and which is now being used by Defendant as a reason to justify firing her.

***Defendant's Discriminatory And Retaliatory Conduct Continued And Escalated***

18. Defendant's pattern of discriminatory and retaliatory conduct continued and escalated throughout the remainder of Plaintiff's employment. To be sure, Defendant repeatedly denied Plaintiff the opportunity to work on longer-term projects and/or assignments that could be charged to clients because of her disabilities and need for FMLA leave, which in turn inhibited her ability to be promoted.

19. For example, in December 2016 and January 2017, Plaintiff was hospitalized and had a drain placed in her spleen to help treat her PSC. Before Defendant was aware of Plaintiff's need for a drain, a managing director staffed Plaintiff on work for a client located in the Southeastern United States. The project's start date was February 6, 2017, and at the request of the senior manager on the project, Plaintiff began doing some preliminary work. A few days before the project was to officially begin, the managing director learned that Plaintiff had a drain in her spleen and questioned whether Plaintiff could travel. Plaintiff confirmed with her doctor that she could travel, even with the drain, and reported this to the managing director. Nonetheless, the managing director ignored the medical advice and unilaterally decided Plaintiff should not travel and removed her from the project.

20. Following this involuntary removal from the project and for nearly four months, Plaintiff was mostly "on the bench," meaning she was not performing billable work for any clients, further damaging her career and standing within the company.

21. For further example, Plaintiff's next project began in June 2017 and went well for the first six months. However, in January 2018, Plaintiff disclosed her disabilities to the senior manager and managing director on that project because she needed to take FMLA leave. Within a month, Defendant abruptly removed her from that project as well.

5

22. Similarly, in August 2018, Plaintiff was assigned to work on a project, but was removed after approximately two months because of her medical issues and need for intermittent FMLA leave. To be sure, when Plaintiff advised her supervisor on the project that she needed to use intermittent leave, he was displeased by her need for time off, asking if she was okay "health wise" and commenting in a negative tone, "Seems like a lot of doctor visits." Plaintiff felt compelled to explain her medical condition in response to his questions and comments and a month later, she was removed from the project. Another manager on the project, who was doing the same work as Plaintiff and was not disabled or in need of FMLA leave, was allowed to stay on the project even though Plaintiff was more qualified.

23. As yet another example, in January 2019, Plaintiff began working on what turned out to be her final project with Defendant. Plaintiff performed so well during her first two weeks on the project that she was elevated from Deployment Manager to Deployment Lead with other Deployment Managers reporting to her. Once Plaintiff's new supervisor learned of Plaintiff's need for intermittent leave, however, and consistent with her previous experiences, Plaintiff began encountering problems with her supervisor. More specifically, despite knowing that Plaintiff had a drain in her spleen and needed to use intermittent FMLA leave to see her doctors, Plaintiff's supervisor was hostile and unsympathetic and pressured Plaintiff to make up any time she was out, despite there being no deficiency in Plaintiff's work performance and her time away being designated as FMLA leave.

24. On April 4, 2019, Plaintiff complained to her manager/internal career counselor about her supervisor's negativity toward her because of her need for FMLA leave and four days later, Defendant fired her.

*Defendant Unlawfully Fired Plaintiff*

25.     Defendant's discriminatory and retaliatory treatment of Plaintiff culminated in its decision to fire her, effective May 1, 2019, claiming that she exceeded "Time at Level" ("TAL") for her position without obtaining a promotion. This explanation is pretextual; the circumstances make it clear that Defendant simply wanted Plaintiff gone from the organization because of her disabilities and need for FMLA leave.

26.     Further, even assuming exceeding TAL is a valid reason to fire an employee, Defendant's own unlawful conduct caused Plaintiff to exceed any allowable TAL. To be sure, Defendant's bootstrapping of its prior unlawful conduct to its decision to fire her only demonstrates that the termination is also unlawful.

27.     Moreover, Defendant's decision to fire Plaintiff otherwise violates the ADA, IDHR and FMLA because the company failed to take into account any of Plaintiff's FMLA leave when calculating her TAL and without any consideration of reasonable accommodations.

*Defendant Failed To Exercise Reasonable Care To Prevent And Correct Unlawful Conduct*

28.     Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.  Further, Defendant failed to exercise reasonable care to prevent and correct promptly any discrimination.  Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

29.     The discrimination described above was consistent with Defendant's standard operating procedure.

30.     Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

*Plaintiff Timely Filed A Charge Of Unlawful Discrimination*

31. Plaintiff timely filed a charge of unlawful discrimination with the EEOC. After exhausting the administrative process, Plaintiff will request her Notice of Right to Sue and seek leave to amend this Complaint to add claims for disability discrimination and retaliation under the Americans with Disabilities Act and the Illinois Human Rights Act.

*Plaintiff Suffered Damage*

32. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

33. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

34. Plaintiff's career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.

35. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

36. Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### UNLAWFUL CONDUCT IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT

37. Plaintiff realleges paragraphs 1 through 36 and incorporates them by reference into Count I of this Complaint.

38. The FMLA entitles eligible employees to a 12-week leave during any 12-month period for a serious health condition. Plaintiff was an eligible employee.

39. The FMLA also entitles any employee who takes such a leave to be restored to her former position or an equivalent position with equivalent terms and conditions of employment as her former position.

40. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

41. By the conduct as alleged herein, Defendant violated the FMLA.

42. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT II

### RETALIATION IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT

43. Plaintiff realleges paragraphs 1 through 42 and incorporates them by reference into Count II of this Complaint.

44. The FMLA makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice it makes unlawful. Similarly, the FMLA makes it unlawful for any employer to discharge or discriminate against anyone for taking part in proceedings or inquiries under the FMLA.

45. By the conduct as alleged herein, Defendant violated the FMLA.

46. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant as follows:

a. Declare that the acts and conduct of Defendant violate the FMLA;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff liquidated damages;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: July 18, 2019         Respectfully submitted,

By: _/s/Jill Weinstein_

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
33 N. Dearborn, Suite 1170
Chicago, Illinois 60602
(312) 322-0710
(312) 322-0717 (facsimile)